IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Mary L. Green, | ) Civil Action No. 8:09-2313-HFF-BHH |
| Plaintiff, | ) |
| vs. | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Michael J. Astrue, | ) **OF MAGISTRATE JUDGE** |
| Commissioner of Social Security, | ) |
| Defendant. | ) |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Mary L. Green, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act.

### RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS

The plaintiff was 54 years old on November 13, 2006, her amended alleged onset date. (R. at 116.) She has a tenth grade education and past relevant work as a drill press operator, milling machine operator, and electronic machine worker. (R. at 41, 130-134.) She originally alleged she has been disabled since December 10, 2001, due to hip and back problems secondary to a December 2001 fall, but subsequently amended her alleged onset date to November 13, 2006. (R. at 95-101, 116, 117.)

The plaintiff applied for disability insurance benefits in April of 2006. (R. at 95-101.) Her application was denied in an initial determination and upon reconsideration. (R. at 65-73, 80-82.) An administrative hearing with an Administrative Law Judge (ALJ) was held on

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

February 25, 2009. (R. at 19-48.)  On May 13, 2009, in an unfavorable decision, the ALJ found that the plaintiff was not disabled within the meaning of the act. (R. at 6-18). As the Appeals Council denied the plaintiff's request for review (R. at 1-4), the ALJ's decision became the Commissioner's final decision for purposes of judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1) The claimant last met the insured status requirements of the Social Security Act on December 31, 2006.
>
> (2) The claimant did not engage in substantial gainful activity during the period from her amended alleged onset date of November 13, 2006 through her date last insured of December 31, 2006 (20 CFR 404.1571 *et seq.*).
>
> (3) Through the date last insured, the claimant had the following severe impairments: minimal lumbar scoliosis with back pain, left shoulder strain, and depression (20 CFR 404.1520(c)).
>
> (4) Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).
>
> (5) After careful consideration of the entire record, I find that, through the date last insured, the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c). Specifically, she can lift/carry 50 pounds occasionally and 25 pounds frequently, sit six hours in an eight hour workday, stand six hours in an eight hour workday, and walk six hours in an eight hour workday. She is limited to frequently climbing, balancing, stooping, kneeling, crouching, crawling, and reaching. She can perform SVP 3 to 4 work involving detailed, but not complex, tasks.
>
> (6) Through the date last insured, the claimant was capable of performing past relevant work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
> (7) The claimant was not under a disability, as defined in the Social Security Act, at any time from November 13, 2006, the amended alleged onset date, through December 31, 2006, the date last insured (20 CFR 404.1520(f)).

2

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform

3

alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

**DISCUSSION**

The plaintiff contends that the ALJ erred in failing to find her disabled. Specifically, the plaintiff alleges that the ALJ erred (1) in assessing her allegations of disabling pain, and (2) in finding that she had the physical capacity to perform work at the medium level of exertion. The Court will address each alleged error in turn.

**I.     Plaintiff's Credibility**

The plaintiff contends that the ALJ failed to properly assess the credibility of her subjective complaints of pain. Federal regulations, 20 C.F.R. §§ 416.929(a) and 404.1529(a), provide the authoritative standard for the evaluation of pain in disability determinations. *See Craig v. Chater*, 76 F.3d 585, 593 (4th Cir. 1996). Under these regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, "there must be objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 591 (quotation and emphasis omitted). This threshold test "does not . . . entail a determination of the 'intensity, persistence, or functionally limiting effect' of the claimant's asserted pain." *Id.* at 594. Second, and only after the threshold inquiry has been satisfied, "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." *Id.* at 595. When the ALJ fails to "expressly consider the threshold question" and instead proceeds "directly to considering the credibility of [the] subjective allegations of pain," remand is warranted. *Id.* at 596.

It is critical to proceed through the steps in order, because "once objective medical evidence establishes a condition which could reasonably be expected to cause pain of the severity a claimant alleges, those allegations may not be discredited simply because they are not confirmed by objective evidence of the severity of the pain . . . ." *Id.* at 593. Said differently, once an ALJ concludes that an impairment could reasonably be expected to produce the pain alleged, he ought to view any inconsistency or defect in the plaintiff's

5

subjective testimony through a more discriminating lens because the plaintiff's subjective allegations, at that point, are consistent with the objective expectations.

Here, the plaintiff contends that the ALJ "never assessed" the location, duration, frequency, and intensity of her pain, at the second step. This accusation is plainly untrue. (See R. at 7.) In the Court's memory, no decision has ever been more express in its treatment of step two. Not only does the ALJ expressly indicate that he assessed such factors but he was careful to recite in great detail the legal obligations he owed in doing so. *See id.* After determining that the plaintiff's impairments could reasonably be expected to cause the symptoms alleged, the ALJ concluded that her statements concerning intensity, persistence and limiting effects were not credible. (R. at 15-16.)

In support, the ALJ cited various bases for discounting her subjective testimony in this regard. First, he found her subjective complaints of pain and the limitations imposed by her impairments inconsistent with, and not supported by, objective medical findings. (R. at 16-17); *see Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) (finding ALJ can reject claimant's testimony because it was inconsistent with the objective medical evidence). Examinations performed prior to December 31, 2006, consistently showed the plaintiff had normal radiographs and diagnostic testing, as well as near full or full range of motion, normal joints, normal gait and station, and no neurological abnormalities. (R. at 170, 231, 407, 412, 540.)

The ALJ also emphasized evidence that the plaintiff exaggerated her symptoms during the consultative examination, in August 2006. (See R. at 20); *see O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003) (an ALJ may discount a claimant's allegations if there is evidence that he or she was a malingerer or was exaggerating symptoms for financial gain). The ALJ found that the plaintiff's hearing testimony regarding her use of a TENS unit to relieve pain (R. at 35), and her prior report that she used a TENS unit every other day, was inconsistent with the recordation on the TENS unit device, itself, that she had used it only twice for an average session of 22 minutes (R. at 327). (See R. at 16.) Further,

the ALJ noted that the plaintiff had testified that taking medication only brought her pain level down to a four (R. at 35), but on December 18, 2006, the plaintiff had not taken her pain medications, and her pain level was four (R. 507). (See R. at 16.)

As to most of these bases, the plaintiff has made no objection. The plaintiff, however, equivocates with the ALJ's consideration of the her daily activities (R. at 16-17) – that the ALJ cherry-picked, to emphasize, activities which the plaintiff could perform over those she could not or difficulties related to performing the same. The ALJ did conclude that the plaintiff's daily activities (R. at 16, 17), such as cooking, sweeping, washing dishes, shopping for groceries, preparing meals, cleaning the house, and eating out (R. at 37, 200). as inconsistent with the plaintiff's allegation of disabling pain. The Fourth Circuit has affirmed that participating in significant activities of daily living is substantial evidence upon which to discredit subjective complaints of disabling pain. *See, e.g., Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005); *Mastro v. Apfel*, 270 F.3d at 171, 179 (4th Cir. 2001).

The plaintiff complains that the ALJ ignored "the overall thrust of her testimony," though, that bending while doing housework made her pain worse (R. 28); she could not focus well enough to stay on the computer for long (R. 30); and that she had difficulty vacuuming, sweeping, and performing her household chores (R. 34). The ALJ, in fact, recognized such difficulties, generally. (R. at 15.) The ALJ did not ignore the plaintiff's representations that working was painful and difficult, *see id.*; he disbelieved them. Such was his role and duty. In other words, he did not choose certain facts over others, rather he interpreted them differently than the plaintiff would prefer. That is not reversible error. Simply because the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supports the decision. *See Blalock*, 483 F.2d at 775. In truth, her testimony that housework was painful is not "conflicting evidence," it is the subjective effect of her impairment that the ALJ was tasked to measure. He found it less than credible.

7

The plaintiff also contends that the ALJ overstated the implications of the plaintiff's having drawn unemployment benefits, insofar as the plaintiff stopped receiving such benefits nearly four years prior to the alleged onset of disability. Whatever mischaracterization the ALJ made, however, is harmless in light of the numerous other reasons cited for discounting the plaintiff's testimony. *Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where the ALJ erred in evaluating claimant's pain because "he would have reached the same conclusion notwithstanding his initial error").

Lastly, the plaintiff contends that the ALJ wrongly discounted a Dr. Kieth Schentzle's supportive opinion statement regarding the plaintiff's complaints of pain. Dr. Schentzel reported that the plaintiff's pain would be frequent and distracting to the adequate performance of daily activities; would greatly be increased with bending and stooping; that the medications could have some side effects; and that deficiencies in concentration would only occur occasionally, but the pain would remain a significant element in the plaintiff's life. (R. at 472-73.) The plaintiff contends that the ALJ improperly concluded that Dr. Schentzel's opinion (1) was based on an examination performed well after the plaintiff's last insured date, December 31, 2006 (R. at 9, 116), and (2) drew conclusions regarding the plaintiff's pain, prior to that date, were based exclusively on the plaintiff's own representations.

The Court, however, would disagree that the ALJ's assessment of the plaintiff's credibility turned on his view of Dr. Schentzel's opinion. (Compare R. at 15-17 (credibility analysis) with R. at 17 (opinion evidence).) The ALJ made a plain conclusion regarding her credibility prior to his discussion of Dr. Schentzel's opinion. (R. at 17.) Accordingly, whatever error exists in the ALJ's treatment of that opinion cannot be grounds for requiring the ALJ to revisit the plaintiff's truthfulness. The ALJ recounted other substantial evidence, discussed above, apart from his conclusions as to Dr. Schentzel.

As to the merits of the accusation, however, the Court would not quibble with the ALJ's assessment of Dr. Schentzel's opinion. While the plaintiff has put forward significant

8

evidence that the plaintiff was seen numerous times by Dr. Schentzel's colleagues prior to the expiration of her insured status, such that Dr. Schentzel's opinion should not be viewed as having been based on the plaintiff's subjective representations at the 2008 examination alone (see R. at 491-50), the ALJ did not ignore this fact (R. at 17.)  Instead he concluded that even the medical notes from those prior and relevant visits revealed few objective findings and were not otherwise supportive of Dr. Schentzel's ultimate 2008 conclusion. (R. at 17.) The plaintiff does not attempt to assail this view or rehabilitate the prior records.

The ALJ's credibility assessment was based on substantial evidence.

## II.     Residual Functional Capacity

The ALJ found that the plaintiff could perform medium work with frequent climbing, balancing, stooping, kneeling, crouching, crawling, and reaching and that she could perform detailed but not complex tasks at the SVP level of three to four.  (R. at 14.)  The plaintiff contends that it was erroneous of the ALJ to conclude that she could perform the demands of frequent bending and stooping at the full range of medium exertional level work.  The plaintiff asserts that the Medical-Vocational Guidelines would dictate a finding of disabled were she, in fact, limited to a sedentary level of exertion, as opposed to a medium one.

An ALJ must assess a claimant's residual functional capacity "based on all the relevant medical and other evidence." 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(3). Residual functional capacity "is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work related physical or mental activities." SSR 96-8p. Residual functional capacity is the most that a person can do, despite her impairments. *See id.*

The plaintiff argues that the ALJ had no actual medical basis to conclude that the plaintiff could perform the required bending and stooping but rather surmised it.  Of course, the ALJ does not have the burden to identify affirmative evidence that the plaintiff has any particular functionality where there is no indication in the record that she does not. The

9

plaintiff bears the burden of establishing her inability to work within the meaning of the Act. *See* 42 U.S.C. §423(d)(5). She must make a *prima facie* showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

The plaintiff points to the opinion of Dr. Schentzel that bending and stooping would be particularly problematic for the plaintiff. (R. at 472.) As already discussed, however, the ALJ found Dr. Schentzel's opinion not actually supported by findings made during visits within the insured period. The plaintiff has not directed the Court's attention to any.

Accordingly, in the absence of any evidence that the plaintiff could not manage frequent bending or stooping, it cannot be said that the ALJ committed error to conclude that she could.

## **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, this Court concludes that the findings of the ALJ are supported by substantial evidence and recommends that the decision of the Commissioner be affirmed.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks
United States Magistrate Judge

September 10, 2010
Greenville, South Carolina

10